## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                              :
MICHAEL WALTERS,                              :
                                              :          Civil No. 11-6545 (RBK/AMD)
                            Plaintiff,        :
                                              :
            v.                                :          **OPINION**
                                              :
                                              :
RICHARD J. CARSON, et al.                     :
                                              :
                            Defendants.       :
_____              :

**KUGLER**, United States District Judge:

In this case, Plaintiff Michael Walters ("Plaintiff") asserts claims of age and disability

discrimination under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et*

*seq.* ("NJLAD"), violations of the federal Family and Medical Leave Act, 29 U.S.C. § 2611

("FMLA"), breach of contract, and violations of his Fifth and Fourteenth Amendment rights

against the Board of Education of North Hanover Township, and its employees Dr. Richard

Carson and Matthew J. Ernandes, Jr. (collectively the "Defendants").  For the reasons stated

herein, the Court finds that Plaintiff has failed to offer evidence in support of his NJLAD age and

disability discrimination, FMLA, contract, and constitutional claims that would create a genuine

dispute of material fact for trial.  Accordingly, the Court will grant Defendants' motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's action arises out of his alleged unlawful termination from his employment with

the Board of Education of North Hanover Township (the "Board").  Plaintiff believes that his

termination was the result of discriminatory animus and in violation of certain of his rights, while the Defendants contend that Plaintiff's termination was due to excessive absenteeism and not any illegitimate reason. As the Court is evaluating the Defendants' motion for summary judgment, it will view the facts underlying the Plaintiff's claims in the light most favorable to Plaintiff, the non-moving party. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Plaintiff was hired by the Board on December 16, 1995, as a maintenance and grounds employee for the North Hanover Township School District. (Defendants' Local Rule 56.1 Statement of Facts ("Defs.' SOF") ¶ 1; Michael Walters Dep. ("Pl.'s Dep."), October 16, 2012, 13:11-22.) As part of his job responsibilities, Plaintiff would make repairs pursuant to work orders, maintain the School District's grounds, and fill in for bus drivers and custodians. (Defs.' SOF ¶ 47; Pl.'s Dep. 13:14-22.) During his tenure with the Board, Plaintiff was supervised by Mr. Lee Hill, the director of the School District's buildings and grounds department. (Defs.' SOF ¶ 44.) The buildings and grounds department was staffed during the day by two maintenance workers, Plaintiff and Mr. Greg Byles, and by their supervisor Mr. Hill. (Id. ¶ 65.)

Plaintiff's employment contract with the Board was renewed for the 1996-1997 school year, and then renewed each year thereafter for a twelve-month term with a July 1 start date and a June 30 end date. (Id. ¶¶ 2-3.) Pursuant to this contract, Plaintiff received twelve paid sick days per term, and unused sick days could be accumulated and rolled over into the following year. (Id. ¶ 4.)

During his employment, Plaintiff used his paid sick leave when he was unable to work due to his physical ailments, namely, gastrointestinal problems. (Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Facts ("Pl.'s SOF") ¶ 4.) From 2003 to 2004, Plaintiff

used 11.5 paid sick days.  (Defs.' SOF ¶ 55.)  From 2004 to 2005, Plaintiff used 10.5 paid sick

days.  (Id. ¶ 56.)  From 2005 to 2006, Plaintiff used 14 paid sick days.  (Id. ¶ 57.)  And, as of

March 2007, during the 2007-2008 employment term, Plaintiff used 10.5 paid sick days.  (Defs.'

SOF ¶ 58.)

On March 14, 2007, Plaintiff suffered  "an acute myocardial infarction (heart attack) and

underwent emergent cardiac catheterization and angioplasty at St. Francis hospital on the same

day."  (Id. ¶ 5.)  Per doctor's order, Plaintiff remained out of work until June 4, 2007, and the

Board used a long-term substitute to fill in for Plaintiff during his absence.  (Id. ¶¶ 7-8; see also

Affidavit of Matthew Ernandes, Jr.  ("Ernandes Aff.") ¶ 5, Ex. B (attaching Dr. Jay Patel's

Medical Compensable Certificate documenting Plaintiff's heart condition and indicating that

Plaintiff's injury will prevent him from engaging in his regular employment until June 4, 2007).)

On June 4, 2007, Plaintiff returned to work on a full-time basis and without restrictions.  (Defs.'

SOF ¶ 9.)  For the remainder of the 2006-2007 term, Plaintiff did not use a single paid sick day

or no pay day.  (Id. ¶ 10.)  Plaintiff's contract with the Board was renewed for the 2007-2008

term.  (Id. ¶ 11.)

On July 1, 2007, the start of Plaintiff's employment for the 2007-2008 term, Plaintiff had

twelve sick days at his disposal.  (Id. ¶ 14.)  As of August 10, 2007, Plaintiff exhausted all

twelve days.  (Id.)  As of December 14, 2007, Plaintiff used ten "no pay" days.  (Id. ¶ 17.)  On

December 14, 2007, Defendant Matthew Ernandes, who served as Business Administrator and

Board Secretary, met with Plaintiff to discuss his absences.  (Id. ¶ 17.)  In a memorandum to

Plaintiff memorializing this conversation, Defendant Ernandes noted that Plaintiff had

"exhausted all of [his] earned sick leave" and that "as of this date [he] [ ] called out sick twenty-

two [ ] days since July 1, 2007," and had called out "sick a total of nine [ ] days" since Labor

Day.  (Ernandes Aff. ¶ 15, Ex. E.)  Effective immediately, Defendant Ernandes required Plaintiff to furnish a note from his doctor upon his return to work, and instructed Plaintiff that he could not return to work until the note, which had to contain a diagnosis and prognosis, was furnished. (Id.)  Finally, Defendant Ernandes instructed Plaintiff that his attendance had to improve.  (Id.)

By June 30, 2008, the end of the 2007-2008 contract term, Plaintiff called out sick thirty-one times; this included twelve days of paid sick leave and nineteen days of unpaid sick leave. (Defs.' SOF ¶ 15.)  Defendants still renewed Plaintiff's employment contract for the 2008-2009 term.  (Id. ¶¶ 12, 19.)

During the 2008-2009 school year, Plaintiff called out sick twenty times; this included 7.5 days of unpaid sick leave.  (Id. ¶ 19.)  On September 19, 2008, Mr. Hill prepared a memorandum to Plaintiff entitled "Excessive Absenteeism and Proper Call Out Procedure."  In that memorandum, Mr. Hill informed Plaintiff that, since August, his absenteeism had increased and that he only had 8.5 sick days remaining for the 2008-2009 school year.  (Id. ¶ 20; Ernandes Aff., Ex. F.)  Between September 19, 2008, and March 1, 2009, Plaintiff called out sick twelve additional times.  (Defs.' SOF ¶ 21.)

On March 3, 2009, Defendant Ernandes met with Plaintiff to discuss his attendance. (Ernandes Aff. ¶ 21.)  A letter dated that same day from Defendant Ernandes to Plaintiff, noted that as of February 24, 2009, Plaintiff had exhausted his allotted sick time for the 2008-2009 school year, and that he would need to improve his attendance going forward.  (Defs.' SOF ¶ 22, Ernandes Aff., Ex. G.)  In that letter, Defendant Ernandes put Plaintiff on notice that his "position in the maintenance department with the North Hanover Township School District [wa]s in jeopardy due to excessive absenteeism."  (Ernandes Aff., Ex. G.)  Plaintiff's attendance improved in March and April of 2009, but Defendant Ernandes advised Plaintiff that he would

continue to monitor his absenteeism for the next six months; this warning was memorialized in a letter to Plaintiff dated May 1, 2009. (Defs.' SOF ¶ 25; Ernandes Aff., Ex. H.) Plaintiff's contract was renewed for the 2009-2010 school year. (Id. ¶ 26.)

On November 4, 2009, by which time Plaintiff had used ten of his twelve paid sick days for the 2009-2010 school year, Defendant Ernandes recommended to the Superintendent of Schools, Defendant Carson, that Plaintiff's employment contract be terminated and memorialized that recommendation in a letter sent to Plaintiff by regular and certified mail. (Defs.' SOF ¶¶ 27-28; Ernandes Aff. ¶ 25, Ex. I.) Defendant Ernandes based his recommendation on Plaintiff's alleged pattern of absenteeism. (Ernandes Aff., Ex. I.)

On November 13, 2009, Defendant Carson sent Plaintiff a letter by regular mail and hand informing Plaintiff that the status of his employment "may be discussed by the North Hanover Township Board of Education at its Closed Session Meeting of November 17, 2009 and/or its Public Meeting of November 17, 2009." (Ernandes Aff., Ex. J.) Defendant Carson further informed Plaintiff that if he desired he could have the discussion held during the public session. (Id.) Plaintiff did not respond to Defendant Carson's letter, and a closed session was held on November 17, 2009, during which the Board passed a resolution to terminate Plaintiff's employment contract effective December 15, 2009. (Defs.' SOF ¶¶ 34-35.) The next day, Plaintiff was informed of the Board's decision by Defendant Ernandes. (Id. ¶ 36.)

Approximately two years later, on October 21, 2011, Plaintiff filed suit against the Defendants in the Superior Court of New Jersey, Burlington County. On November 8, 2011, the Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, invoking this Court's jurisdiction under 28 U.S.C. § 1331. Plaintiff filed a Motion to Amend/Correct Complaint on April 10, 2012, (Doc. No. 23), which was granted by Magistrate Judge Donio in an Order dated

April 25, 2012, (Doc. No. 24).  This motion sought only to amend the complaint to add McNeil-PPC, Inc. as a defendant, and did not amend the complaint as to the Defendants.  On April 30, 2012, the Defendants answered the Amended Complaint.  (Doc. No. 27.)

On April 26, 2013, the Defendants filed the instant motion for summary judgment.[1] (Doc. No. 59.)  The Court will examine each of Plaintiff's claims in turn.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material

_____

[1] On January 16, 2013, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, seeking only to amend his Amended Complaint as to Defendant McNeil-PPC, Inc.  (Doc. No. 49.)  Because Plaintiff's requested amendments do not implicate his claims against the Defendants, who did not oppose Plaintiff's motion, (Doc. No. 53), the Defendants' earlier-filed Motion for Summary Judgment stands.

facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

### A.    FMLA Claim

The FMLA provides eligible employees the right to twelve weeks of leave during a twelve-month period for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of" his or her position. 29 U.S.C. § 2612(a)(1); see also Conoshenti v. Public Serv. Elec. & Gas. Co., 364 F.3d 135, 141 (3d Cir. 2004).[2]

Employees who take leave pursuant to the FMLA are entitled to certain protections. For

---

[2] There is no dispute that Plaintiff was an "eligible employee" under the FMLA or that his heart attack and subsequent treatment qualified as a serious health condition. See 29 U.S.C. § 2611(2)(A) ("The term 'eligible employee' means an employee who has been employed-(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."); see also id. § 2611(11) (a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . (B) continuing treatment by a health care provider.").

example, an employer may not "interfere with, restrain, or deny [an employee's] exercise of or attempt to exercise" his or her rights under the FMLA (otherwise known as an "interference claim"). 29 U.S.C. § 2615(a)(1); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 (3d Cir. 2012). Further, an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" (otherwise known as a "retaliation claim"). Id. at § 2615(a)(2); see also Lichtenstein, 691 F.3d at 301.

"To prevail on an FMLA interference claim, [Plaintiff] merely needs to show []he was entitled to benefits under the FMLA and that []he was denied [those benefits]." Yamamoto v. Panasonic Corp. of N. Am., No. 12-2352, 2013 WL 3356214, at *10 (D.N.J. July 2, 2013). In contrast, a claim for retaliation under the FMLA "is based on the idea that the substantive rights established by the FMLA prevent an employer from discriminating against employees or prospective employees who have taken FMLA leave." Thurston v. Cherry Hill Triplex, 941 F. Supp. 2d 520, 530 (D.N.J. 2008). To prevail on an FMLA retaliation claim, a plaintiff must prove three things: (1) that he invoked his right to FMLA-qualifying leave; (2) that he suffered an adverse employment decision; (3) that there is a causal relationship between the leave request and the adverse action. Lichtenstein, 691 F.3d at 301-02.

Here, Plaintiff has not specified whether his claim under the FMLA is one for interference or retaliation.[3] However, in his Amended Complaint, Plaintiff sets forth the sole

---

[3] Although Defendants propounded interrogatories to Plaintiff that requested that he "provide a narrative of the actions that violated . . . the [FMLA]," Plaintiff responded by simply identifying paragraphs seven through fourteen of his Amended Complaint, which do not provide any clarity on this issue. Paragraphs seven through fourteen read as follows:

> 7. The plaintiff, Michael Walters, worked as a custodian in the maintenance and grounds department of the North Hanover Township Board of Education for fourteen years until his termination on November 4, 2009.  8.  On March 14, 2007, Mr. Walters had a heart attack, and as a result, he was out of work for two months.  9.  Mr. Walters was prescribed Cymvastin, a medication which made him sick, and which caused him to be absent from work.  10.  In October 2009, Mr. Walters began taking Tylenol Arthritis, a medication manufactured by the defendants, Johnson & Johnson and McNeil-PPC, Inc.  11.  On or about

allegation that "[t]he termination of the plaintiff by the [Defendants] constituted a willful violation of the [FMLA]." (Am. Compl. ¶ 18.) Accordingly, the Court will evaluate this claim as one of retaliation.[4] See Yamamoto, 2013 WL 3356214, at *10-11 (collecting cases and holding that because the premise of Plaintiff's claims for retaliation and interference "is that Defendant wrongfully terminated Plaintiff when she returned from FMLA leave . . . [her] claims are duplicative" and thus will be construed as a single claim of retaliation). Where, as here, a plaintiff's FMLA retaliation claim rests on circumstantial evidence, the Court assesses the

_____

October 21, 2009, Mr. Walters began experiencing stomach problems, which caused him to miss time from work on October 21st, 22nd, 23rd, 2009, and on November 3rd and 4th, 2009. 12. On November 4, 2009, a letter was sent to Mr. Walters from Matthew J. Emandes, Jr., the business administrator of the North Hanover Township School District and the secretary to the Board of Education of North Hanover Township, advising him that he was recommending to the superintendent of that school district, Dr. Richard J. Carson, that Mr. Walters' contract with the North Hanover Township District should be terminated effective December 1, 2009. This letter was received by Mr. Walters on November 6, 2009. 13. The reason stated by Mr. Emandes in his letter for the termination of Mr. Walters was that Mr. Walters had utilized ten of his allotted twelve sick days since July 1, 2009. 14. The Board of Education of North Hanover Township Schools terminated Mr. Walters from employment as of December 1, 2009, at the recommendation of Dr. Carson and Mr. Ernandes.

(See Am. Compl. ¶¶ 7-14.) Plaintiff also fails to cite to portions of the record in a way that would support his claim.

[4] In his opposition to Defendants' motion for summary judgment, Plaintiff argues, for the first time, that the Defendants "never allowed him to request leave pursuant to the FMLA," (Pl.'s SOF ¶ 5), and that they had an "obligation to facilitate [his] use of time off from work pursuant to the [FMLA]," (Pl.'s Br. ¶ 4.) These arguments are more appropriately characterized as claims of interference. See Conoshenti, 364 F.3d at 142-43 (stating that Plaintiff "will show an interference with his right to leave under the FMLA . . . if he is able to establish that [defendant's] failure to advise [him of his right to twelve weeks of FMLA leave] rendered him unable to exercise that right in a meaningful way, thereby causing injury."). As an initial matter, "claims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment." Bey v. Daimler Chrysler Servs. of N. Am., No. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb.15, 2006); see also Anderson v. DSM N.V., 589 F. Supp. 2d 528, 538 (D.N.J. 2008) (declining to address claim raised for the first time in opposition to defendants' motion for summary judgment); see also Defs.' Br. 14 (identifying Plaintiff's failure to make any allegations of interference "by way of complaint or answers to interrogatories."). Cf. Conoshenti, 364 F.3d at 146 (holding that the moving party did not satisfy its initial burden of pointing to an absence of evidence as to whether Conoshenti had been prejudiced. Conoshenti was therefore not required pursuant to Fed. R. Civ. P. 56(e), to respond with specific facts establishing a genuine issue with respect to the prejudice requirement."). However, even if the Court evaluated Plaintiff's FMLA claim as one of interference, Plaintiff would still fail to establish a violation of the FMLA because he has not pointed to any part of the record sufficient to raise an issue of material fact that Defendants' alleged failure to facilitate his time off from work pursuant to the FMLA "rendered him unable to exercise" his rights "in a meaningful way, thereby causing injury." Conoshenti, 364 F.3d at 143. The record is clear that Plaintiff took a leave of absence and was reinstated to his position upon his return to work. Whether, like the Plaintiff in Conoshenti, Plaintiff would have structured his leave differently had he fully understood his rights under the FMLA, he still has failed to raise an issue of material fact that such interference prejudiced his ability to take the leave he needed

plaintiff's case using the familiar burden-shifting framework established in <u>McDonnell Douglas</u>

<u>Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Lichtenstein</u>, 691 F.3d at 302.

Under the <u>McDonnell Douglas</u> framework, the plaintiff has the initial burden of

establishing a prima facie case of FMLA discrimination. <u>See</u> <u>Naber v. Dover Healthcare</u>

<u>Assocs., Inc.</u>, 473 F. App'x 157, 159-60 (3d Cir. 2012). Doing so creates a rebuttable

presumption that the employer unlawfully discriminated against him. <u>Thurston</u>, 941 F. Supp. 2d

at 532. Consequently, upon the plaintiff establishing his prima facie case, the burden shifts to

the defendant "to articulate a legitimate, nondiscriminatory reason for its adverse employment

action." <u>Naber</u>, 473 F. App'x at 160 (quoting <u>Bearley v. Friendly Ice Cream Corp.</u>, 322 F. Supp.

2d 563, 571 (M.D. Pa. 2004)). If the defendant employer can offer such a reason, the

presumption of unlawful discrimination falls away, and the burden shifts back to the plaintiff,

who must show that the employer's proffered reason was simply a pretext for retaliatory animus

owing to the plaintiff's decision to take FMLA leave. <u>Id.</u>

Here, Defendants do not dispute that Plaintiff invoked his right to FMLA-qualifying

leave, or that he suffered an adverse employment decision. (Defs.' Br. 11-19.) Defendants do

contend, however, that Plaintiff "has not established a causal connection between his extended

absence and his termination," and thus cannot establish the third prong of his prima facie case.

(<u>Id.</u> 16.)

      1.  <u>Whether There is a Causal Relationship Between Plaintiff's Leave Request and</u>
           <u>His Termination</u>

Establishing a causal relationship between an employee's decision to take FMLA leave

and an adverse employment event requires proof of the employer's retaliatory intent. Retaliation

need not be the sole reason motivating the adverse employment decision; rather, it will suffice

for the plaintiff to show that the retaliatory animus was "a determinative factor," <u>i.e.</u>, that "the

action would not have been taken but for [the] protected activity." <u>Culler v. Shinseki</u>, 840 F.

Supp. 2d 838, 846 (D.N.J. 2011) (citing <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d

217, 231-32 (3d Cir. 2007)).[5]   Stated another way, the court's inquiry is whether the proffered

evidence "suffices to raise the inference" that the plaintiff's request for FMLA leave was

causally related to the adverse employment action in question.  <u>See</u> <u>LeBoon</u>, 503 F.3d at 232.

        The Third Circuit has noted that there are two main methods of raising such an inference.

<u>Abramson v. William Paterson Coll. of N.J.</u>, 260 F.3d 265, 288 (3d Cir. 2001).  First, where

there exists "unusually suggestive" timing between the leave request and the adverse

employment action, such circumstance may be sufficient to establish causation.  <u>Lamarca v.

Verizon Pa., Inc.</u>, No. 09-203, 2010 WL 2044627, at *9 (W.D. Pa. May 20, 2010) (citing

<u>LeBoon</u>, 503 F.3d at 232).  Second, causation may be established based on a period of

"intervening antagonism."   <u>LeBoon</u>, 503 F.3d at 232.  To make this determination, courts

consider "a broad array of evidence."   Importantly, it is incumbent upon the employee to

demonstrate that the antagonistic behavior began after the FMLA request was made.  <u>Compare

Randler v. Kountry Kraft Kitchens</u>, No. 11-474, 2012 WL 6561510, at *12 (M.D. Pa. Dec. 17,

2012) (rejecting plaintiff's causation argument in part because the alleged antagonistic behavior

---

[5] The <u>Culler</u> court freely relies on cases like <u>LeBoon</u> to inform its FMLA retaliation claim prima facie analysis, even though the plaintiff in <u>LeBoon</u> was asserting a retaliation claim not under the FMLA but rather under Title VII of the Civil Rights Act.  <u>LeBoon</u>, 503 F.3d at 231.  Indeed, numerous district courts in this Circuit have observed that the Third Circuit's decisions involving claims of retaliation under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act provide "helpful guidance" in the FMLA context.  <u>E.g.</u>, <u>Chapman v. UPMC Health System</u>, 516 F. Supp. 2d 506, 523-24 (W.D. Pa. 2007); <u>Grosso v. Federal Exp. Corp.</u>, 467 F. Supp. 2d 449, 459 (E.D. Pa. 2006); <u>Collier v. Target Stores Corp.</u>, No. 03-1144, 2005 WL 850855, at *7 (D. Del. Apr. 13, 2005). While the Third Circuit has never explicitly approved of this borrowing practice, its endorsement of this approach can be inferred based on its own FMLA analyses.  <u>See, e.g.</u>, <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 307 (3d Cir. 2012) (discussing the causation element in the FMLA retaliation prima facie case and explaining the concept by reference to its Title VII discrimination precedents) (citing <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279-81 (3d Cir. 2000) and <u>LeBoon</u>, 503 F.3d at 232); <u>Schofield v. Metro. Life Ins. Co.</u>, 252 F. App'x 500, 504 (3d Cir. 2007) (employing the same practice by reference to Title VII and ADA discrimination precedents) (citing <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 431 (3d Cir. 2001) (Title VII) and <u>Williams v. Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004) (ADA).  The Court will adhere to this practice in the instant matter.

towards plaintiff, taking the form of "jokes and remarks," was "not markedly different from the incidents [the plaintiff] experienced prior to her" engaging in protected activity) with Abramson, 260 F.3d at 289 (crediting plaintiff's evidence of ongoing antagonism in light of evidence of plaintiff's superior's "change in demeanor after [plaintiff engaged in protected activity]") (emphasis added).  Finally, in addition to these two primary methods, inconsistencies or discrepancies in the employer's articulated reasons for terminating the employee may be sufficient to support an inference of causation.  LeBoon, 503 F.3d at 232; Abramson, 260 F.3d at 290.  Id.  When considering any circumstantial evidence of causation, the Court is to lend "a careful eye to the specific facts and circumstances encountered."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000).

Plaintiff fails to identify any portion of the record supporting an inference that his extended leave in the spring of 2007 was related to his termination in December of 2009.  Upon returning to full duty after his leave of absence, Plaintiff continued to work for more than two years, and his employment contract was renewed three more times.  (Defs.' SOF ¶¶ 11-12, 19, 25.)

As Plaintiff was terminated more than two years after his leave of absence, there is no "unusually suggestive" timing tending to show a causal relationship between a FMLA-protected activity and his termination sufficient to establish the third prong of Plaintiff's prima facie case. See Brennan v. Norton, 350 F.3d 399, 424 (3d Cir. 2003) (twenty-one month time lapse is too remote in time to support an inference of retaliation).  Davis v. City of East Orange, No. 05-3720, 2008 WL 4328218, *9 (D.N.J. Sept. 17, 2008) (3-7 year time lapse between Plaintiff's protected activity and adverse employment action too remote in time to support an inference of retaliation).

Second, Plaintiff has not identified any evidence or portion of the record tending to show that there was a period of "intervening antagonism" after Plaintiff notified Defendants that he would need time off to recover from his heart attack. Indeed, Plaintiff went out on leave on March 14, 2007, the same day that he was hospitalized for this illness. (See Defs.' SOF ¶¶ 5, 7-8; see also Affidavit of Matthew Ernandes, Jr. ("Ernandes Aff.") ¶ 5, Ex. B (attaching Dr. Jay Patel's Medical Compensable Certificate documenting Plaintiff's heart condition and indicating that Plaintiff's injury will prevent him from engaging in his regular employment until June 4, 2007).) Further, Plaintiff has not identified any antagonistic behavior on the part of Defendants after he returned from his leave of absence. The record demonstrates that once Plaintiff returned to work, Defendants met with Plaintiff to address his absenteeism.[6]

Finally, Plaintiff has not identified any evidence showing any inconsistencies or discrepancies in the Board's reasons for terminating his employment. Indeed, the record before the Court documents Plaintiff's absenteeism, Defendants' issue with that absenteeism, Defendants' attempts to encourage Plaintiff to improve his attendance, and finally Defendants' decision to recommend to the Board that Plaintiff's employment be terminated due to his absenteeism. Additionally, Plaintiff has not pointed to any evidence in the record that his post-leave absences from 2007 to 2009, which, based on the undisputed record, formed the basis for the Board's decision to terminate Plaintiff's employment, were in any way related to his heart condition.[7]

---

[6] In combing through Plaintiff's deposition testimony, it appears that at one point Plaintiff complained that he was always assigned the "dirty jobs" (Pl.'s SOF ¶ 10; Pl.'s Dep. 27:3-31:11.) However, Plaintiff then testifies that he was assigned these jobs because he complained to Defendant Carson about other employees' work ethic and mistakes, and not because he took a leave of absence. (See id.)

[7] The record actually demonstrates that Plaintiff had a number of follow up appointments for his heart condition and was doing well from a cardiac standpoint. (See Harrison Certification, Ex. 6 (providing reports from Plaintiff's physician dated April 12, 2007, November 29, 2007, May 15, 2008, August 28, 2008, March 5, 2009, and October 29, 2009, stating that Plaintiff was "doing well from a cardiac standpoint," "he has been active at work and has

It is well settled that the FMLA is not to be used as an excuse for sporadic, sick-day type absences.  See Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007); see also Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 454-55 (W.D. Pa. 2008) (the FMLA does not entitle an employee to take unscheduled and unpredictable, yet cumulatively substantial absences at a moment's notice when reliable attendance is a bona fide requirement of the position).  Having failed to point to any part of the record establishing a causal link between his three-month leave in 2007 and his termination in late 2009, and having failed to respond to Defendants' proffered evidence and arguments sufficient to create a genuine dispute of material fact, the Court need go no further in its McDonnell Douglas analysis.  Accordingly, Defendants will be granted summary judgment as to this claim.

**B.     NJLAD Claim Against The Board**

Defendants also seek summary judgment as to Plaintiff's claim for wrongful discharge due to his disabilities under the NJLAD.[8]

---

performed exertion at work without any difficulties," "he feels well and has no complaints," and "[h]e has been working without any issues").  The medical records available to the Court related to Plaintiff's non-leave related absenteeism include three doctor's prescriptions stating:  (1) Plaintiff was seen on October 21, 2009, he was sick, and rest was recommended for October 21 and "possible 10/22/09"; (2) that Plaintiff was seen for a respiratory infection on October 23, 2009, and that "he is going to rest"; and (3) he was seen on November 3, 2009, and would be resting from "11/3/09 to 11/4/09[.] He is sick".  (Harrison Certification, Ex. 13.)  There is no mention of Plaintiff's heart condition.

[8] Although Plaintiff alleges in his Amended Complaint that Defendants terminated his employment due to his age, (see Am. Compl. ¶ 17), he points to no set of facts and fails to advance any legal arguments in support of that allegation.  Indeed, in Plaintiff's opposition to Defendants' motion for summary judgment, he only argues that summary judgment should be precluded because an issue of material fact exists with regard to whether Defendants violated his rights under the NJLAD on account of his three handicaps.  Further, Plaintiff testified in response to a question about his NJLAD claim that "I don't remember saying nothing about my age being a problem."  (Pl.'s Dep. 14:6-15:2.)  As Plaintiff bears the burden of establishing his prima facie case of age discrimination, see Anderson v. Thermo Fisher Scientific, No. 11-3394, 2013 WL 1222738, at *3 (D.N.J. Mar. 25, 2013), and it appears that he has abandoned this claim, it is properly dismissed.  See Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ( "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325)).

The NJLAD prohibits an employer from discriminating in the "terms, conditions, or privileges of employment" on the basis of a person's disability. N.J. Stat. Ann. § 10:5-12(a). To state a prima facie cause of action for disability discrimination claim under the NJLAD, the employee must prove "(1) that she was handicapped, (2) that she was otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer, and was performing at a level that met the employer's expectations, (3) that she nevertheless was fired, and (4) that the employer sought someone to perform the same work after she left." Dicino v. Aetna U.S. Healthcare, No. 01-3206, 2003 WL 21501818, at *12 (D.N.J. June 23, 2003) (citing Muller v. Exxon Research & Eng'g Co., 786 A.2d 143, 147-48 (N.J. Super Ct. App. Div. 2001)).[9]

A claimant may use circumstantial evidence to establish his claim under the NJLAD. In evaluating such a claim, the Court again applies the McDonnell Douglas three-step burden shifting framework. See also Wright v. L-3 Comms. Corp., 227 F. Supp. 2d 293, 297 (D.N.J. 2002) (citing Bergen Comm. Bank v. Sisler, 723 A.2d 944, 955 (N.J. 1999)).

Under McDonnell Douglas, Plaintiff has the initial burden of establishing the four elements of a prima facie case of disability discrimination. See Wright, 227 F. Supp. 2d at 297. Doing so creates a rebuttable presumption that the employer unlawfully discriminated against him or her. Id. Consequently, upon the plaintiff establishing his or her prima facie case, the burden shifts to the defendant who must "come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the employee." Id. (citing Sisler, 723 A.2d at 955). If the defendant employer can offer such a reason, the presumption of unlawful discrimination

---

[9] In his brief in opposition to Defendants' motion for summary judgment, Plaintiff appears to allege, for the first time, that Defendants failed to accommodate his disabilities. However, because Plaintiff failed to plead in his Amended Complaint a NJLAD claim for failure to accommodate, the Court will not consider it in resolving the instant motion. See supra note 4 (citing Anderson, 589 F. Supp. 2d at 538 (D.N.J. 2008); Bey, 2006 WL 361385, at *11).

falls away, and the burden shifts back to the plaintiff, who must show "that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." Id. (citing Sisler, 723 A.2d at 955). When conducting this analysis, the Court is mindful that the plaintiff's burden, in its essence, is to show that his or her disability "played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004).

Defendants do not contest the third and fourth elements of Plaintiff's prima facie case of disability discrimination. As such, the only issues before the Court are whether Plaintiff was "handicapped" within the meaning of the NJLAD, and whether he was otherwise qualified to perform the essential functions of his job, with or without an accommodation by the Board, and was performing at a level that met the Board's expectations. Because Plaintiff's claim fails on the second element of his prima facie case, whether he was otherwise qualified to perform the essential functions of his job, the Court will not decide whether he has presented sufficient evidence that he was handicapped under the NJLAD. See Mitchell v. Bristol-Myers Squibb Co., Inc., No. 95-1794, 1996 WL 466535, at *5 (D.N.J. May 6, 1996).

1. Plaintiff's Qualification to Perform the Essential Functions of His Job

To establish the second element of a prima facie cause of action for disability discrimination under the NJLAD, the employee must prove that he "was otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer, and was performing at a level that met the employer's expectations." Dicino, 2003 WL 21501818, at *12. Where an employee has poor attendance, and that poor attendance prevents the employee from performing the essential functions of his job, he will be unable to prove the

second element of his prima facie case. See Taylor v. Virtua Health, Inc., No. 05-4271, 2007 WL 1827094, at *4 (D.N.J. June 25, 2007) (Plaintiff with poor attendance, who was warned that further absences would lead to her termination, was unable to prove the second element of her prima facie case for discrimination under the NJLAD, that "she was performing her job at a level that met Defendants' legitimate expectations"); see also Miller v. Univ. of Pittsburgh Med. Ctr., 350 F. App'x 727, 729 (3d Cir. 2009) ("Attendance can constitute an essential function under the ADA").[10]

Defendants argue that due to Plaintiff's absenteeism, he was not performing his job at a level that met his employer's legitimate expectations. (Defs.' Br. 30-31.) Plaintiff does not respond. (See generally, Pl.'s Opp'n Br.)

In support of their argument, Defendants rely on the School District's custodial procedure guidelines, which state that a qualified custodian/maintenance worker must be "in good physical and mental health" and "dependable, on time and willing to work." (Harrison Certification, Ex. 8 at 06.) They also rely on Board missives stating that "the regular presence of assigned personnel is vital to the success of the district's educational program", (id. Ex. 4), and that "employees who have poor absenteeism and tardiness records often do not realize that poor attendance hinders the operation of the school district, (id. Ex. 5). Finally, Defendants Ernandes and Carson, and Mr. Hill all stated that Plaintiff's absenteeism had a negative effect on the operation of the maintenance department during the last few years of his employment. (See Harrison Certification, Ex. 9, Hill Dep. 38:8-15 ("Q When Mr. Walters would call out sick, did

---

[10] Although Miller involved a claim under the ADA, "[i]n analyzing a claim for discrimination on the basis of a perceived disability, both the ADA and NJLAD use an identical process." Dennis v. Cnty. of Atl. Cnty., 863 F. Supp. 2d 372, 378 (D.N.J. 2012) (citing Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 70 (3d Cir. 1996).

another employee replace him for that day or days that he was absent?  A No.  Q Was that a detriment to the maintenance and grounds department?  A Yes. It took away from our workforce, that's for sure."); Carson Dep. 60:14-25 ("Q Did you ever consider hiring a substitute, like a substitute maintenance worker just like you have substitute teachers?  A See, when it's sporadic like that, that's very difficult to do. You know, we have subs for the maintenance -- I mean for janitorial things, but for maintenance, it's a little bit harder to bring somebody in and then you have them, you know, finding a plumber who has the skills to fix a toilet or to -- or to drive a bus -- you know, you just don't find those people. So, the department who has two full-time people is down a person, so half the staff is gone."[11]); Ernandes Dep. 83:20-84:14 ("Q Who else was advocating the termination of Michael  Walters?  A Mr. Hill. I feel that very, very strongly , and understanding this, Mr. Hill had to work with Mr. Walters.  Mr. Hill with a small staff . . . would complain that [Plaintiff] Is never in. I understand that. He's got over 300,000 square feet of school buildings to maintain, acres of grounds, staff of three people, one of whom is a night supervisor. So, whatever time [Plaintiff] was out was more work for the two men who were left plus himself . So, he was pushing for it. And he was helping maintain a record.  And I think he did a good job as a director, that's his job. He was telling me, Matt, you give me work to do, I

---

[11] In paragraph ninety four of Defendants' Local Rule 56.1 Statement of Facts, Defendants summarize and cite to Defendant Carson's testimony about the School District's difficulty in finding substitutes to cover Plaintiff's absences.  Plaintiff denied this fact, but offered only argument in response.  (See Pl.'s SOF ¶ 94 ("Michael Walters had a contract with the North Hanover School District, which allowed him a significant number of paid days off from work due to illness. Moreover, federal and state laws exist that should have protected Michael Walters because he took time off from work due to his handicap or for illness. Covering for sick employees is a common and necessary practice for any school district and for any company, be it a government entity or a profit or non-profit business organization.").)

Regardless of whether "[c]overing for sick employees is a common and necessary practice for any school district and for any company," Plaintiff's statement is nonresponsive to Defendant Carson's testimony about the effect of Plaintiff's absenteeism.  Because "[t]he Rule 56.1 statement of facts is not the place for argument," without more, this testimony remains undisputed.  Beatty v. Elk Twp., No. 08-2235, 2010 WL 1493107, at *4 n.2 (D.N.J. Apr. 14, 2010); see also Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .); Assadourian v. Harb, No. 06-896, 2010 WL 2560495, at *4 n.2 (D.N.J. June 21, 2010) ("[A]rgument by counsel unsupported by any evidence in the record . . . woefully fails to satisfy Plaintiff's obligation under Local Rule 56.1").

have assignments to do; I can't get it done with this staff he was telling me."[12])  Finally, Plaintiff also testified that he was aware that taking too many sick days was grounds for termination.  (Defs.' SOF ¶ 103; Pl.'s Dep. 33:7-12.)

Because the undisputed facts show that Plaintiff's attendance was vital to the operation of the maintenance department, he cannot establish he second element of his prima facie case and thus Defendants will be granted summary judgment on this claim as well.  See Mitchell, 1996 WL 466535, *7 (finding that, "on the undisputed facts, plaintiff was not 'otherwise qualified' to perform the custodial tasks for which he was responsible" because "plaintiff demonstrated an apparent inability to attend his job on a regular basis[,] [t]his absenteeism prevented plaintiff from performing the essential functions of his job[,]" and "the law require BMS to accommodate plaintiff's absenteeism" where doing so would "eliminate[] an essential element of the job, such as attendance at the work place").

## C.    NJLAD Claim Against Defendants Carson and Ernandes

Because the NJLAD "imposes liability only on 'employers' and not on individual employees . . . the only way for an employee to be found individually liable under the NJLAD is

---

[12] Plaintiff again argues in his Local Rule 56.1 Statement of Facts that his absences did not affect the maintenance department's ability to operate:

> Mr. Walters' absences did not affect the maintenance department's ability to efficiently process work orders and to make necessary repairs in a timely fashion. There was no evidence in the record that the administrators or any of Michael Walters' supervisors ever complained about or blamed Mr. Walters or the maintenance department's ability to efficiently process work orders and to make necessary repairs in a timely fashion. Michael Walters was never criticized or disciplined for this. Two of the school principals did some minor grumbling concerning the speed of the maintenance department to do its repairs, but this was just the normal impatience of school administrators to get their buildings repaired quickly. There were never any memoranda or letters circulated by the school principals criticizing the maintenance department. If the maintenance department was slow in making repairs, it was because North Hanover only had two daytime maintenance workers to make repairs for a school district that was comprised of five school buildings. This is a tiny maintenance staff in comparison to most South Jersey school districts of comparable size. Moreover, if there was any problem with the maintenance department, it would have been attributable to its head, who was Lee Hill.

(Pl.'s SOF ¶¶ 74-76.)  Although Plaintiff denies the truth of Defendant Ernandes' testimony, he points to nothing in the record in support of his denial.  This testimony remains undisputed.  See supra note 10.

if he is involved in aiding or abetting an employer's discriminatory conduct . . . .  Accordingly,
while an employee cannot be held individually liable on his own, '[e]mployers and individual
supervisors can be held liable under the [NJLAD] for aiding and abetting another's [ ]
discriminatory conduct." Horvath v. Rimtec Corp., 102 F. Supp. 2d 219, 228 (D.N.J. 2000)
(citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999)).

Plaintiff must establish three elements for an aiding and abetting claim under the NJLAD:
"(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the
defendant must be generally aware of his role as part of an overall illegal or tortious activity at
the time that he provides the assistance; (3) the defendant must knowingly and substantially
assist the principal violation." Hurley, 174 F.3d at 127 (citations omitted).

Defendants argue that Defendants Carson and Ernandes cannot be held liable under the
NJLAD and the Court agrees.  Not only does Plaintiff fail to plead a claim for "aiding and
abetting" liability, he fails to point to any part of the record that would establish such liability.
Regardless of whether Plaintiff has failed to properly allege this claim or point to any part of the
record establishing aiding and abetting liability, however, Plaintiff has failed to present triable
issues of fact on his underlying disability discrimination claim.  Because Defendant North
Hanover Township Board of Education is entitled to summary judgment on that claim,
Defendants Carson and Ernandes cannot be held individually liable for those same claims.  See
Monaco, 359 F.3d 307 n.15 ("[I]nasmuch as we hold that the district court correctly granted
summary judgment to the corporate defendants, any claim he brought against the individual
defendants for aiding and abetting fails as well"); Jackson v. Del. River & Bay Auth., No. 99-
3185, 2001 WL 1689880, at *22 (D.N.J. Nov. 26, 2001) ("If the NJLAD does not apply to the

employer [ ], then no individual aiding and abetting liability may be found, because an employer's liability must be shown before any supervisory liability for violations can exist.").

Accordingly, the Court dismisses Plaintiff's NJLAD claims against Defendants Carson and Ernandes.

### D. Breach of Contract Claim

Defendants argue that Plaintiff's breach of contract claim fails because he was an at-will employee and because his employment was terminated in accordance with the terms of his contract, which provided for termination by either party upon thirty days' notice. (Defs.' Br. 35.) Plaintiff responds that Defendants breached their contract with Plaintiff when they fired him for using ten of his twelve contractually allotted sick days during the 2009-2010 school year, which Defendants were required to provide pursuant to Board policy and New Jersey labor law.[13] (Pl.'s Opp'n Br. ¶ 1.)

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994) (internal citation omitted)). If parties' to an employment agreement intend for the relationship to be something other than at-will, such intention must be "specifically stated in explicit,

---

[13] One exception to the at-will doctrine is that "an at-will employee may sustain a claim for wrongful termination if he shows that his discharge was contrary to a clear mandate of public policy." Wiegand v. Motiva Enterprises, LLC, 295 F. Supp. 2d 465, 473 (D.N.J. 2003) (internal quotation marks omitted). To the extent Plaintiff is attempting to allege that his termination violated public policy because he was fired for using sick days to which he was contractually obligated pursuant to state law—allegations which, notably, do not appear anywhere in Plaintiff's Amended Complaint—his argument is without merit. Plaintiff has failed to identify any part of the record creating an issue of material fact as to Defendants' contention that Plaintiff was fired not because he used ten of his twelve sick days during the 2009-2010 school year, but because of his "excessive absenteeism during the last two years." (Ernandes Aff., Ex. J.) Accordingly, the Court need not address whether the termination of an at-will employee for using sick days to which he was entitled state law is a violation of public policy.

contractual terms." <u>Anderson v. DSM N.V.</u>, 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (internal quotation marks and citation omitted)).

Here, the employment contract between Plaintiff and the Board of Education of North Hanover Township explicitly states that it "may at any time be terminated by either party giving to the other 30 days' notice in writing of intention to terminate the same." (Harrison Certification, Ex. 12.) The record indicates that on November 4, 2009, Plaintiff was notified by Defendant Ernandes that the termination of his contract was being recommended to Dr. Carson. (Ernandes Aff. ¶ 25, Ex. I.) On November 13, 2009, Defendants provided Plaintiff with notice that the Board would be considering the status of his employment during a closed session meeting on November 17, 2009. (Ernandes Aff. ¶ 31, Ex. J.) On November 18, 2009, Defendants sent Plaintiff a letter stating that during the November 17 Meeting, the Board "adopted a resolution to terminate your employment with the North Hanover Township School District effective December 15, 2009 due to excessive absenteeism." (<u>Id.</u>, Ex. L.) Having been notified by Defendant Ernandes of his intention to recommend termination on November 4, 2009, and being terminated with an effective date of December 15, 2009, Defendants provided Plaintiff with thirty days' notice pursuant to the terms of Plaintiff's employment contract.

Accordingly, because the contract does not include any terms that would overcome the presumption that Plaintiff's employment was at-will, Plaintiff fails to provide any factual support to the contrary, and Plaintiff's termination was done in conformity with the terms of the contract, there are no genuine issues of material fact with regard to this claim and thus it will be dismissed.

## E. Fourteenth Amendment Claim[14]

Finally, Defendants argue that summary judgment is warranted as to Plaintiff's claim that Defendants violated his procedural and substantive due process rights. (Defs.' Br. 34-36.) Plaintiff responds that his termination was "arbitrary and capricious", mainly due to the fact that the Board had no policy setting forth the parameters of what constituted excessive absenteeism, and that "[t]his lack of a standard violated [his] procedural and substantive due process rights under the Fourth [sic] Amendment to the United States Constitution."[15] (Pl.'s Opp'n Br. ¶ 5.)

### 1. Procedural Due Process Claim

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment. Whether a person has a legitimate entitlement to-and hence a property interest in-his government job is a question answered by state law." Hill, 455 F.3d at 234 (internal citations and quotation marks omitted).

---

[14] Plaintiff alleges that Defendants violated his substantive and procedural due process rights under the Fifth and Fourteenth Amendments, and that these violations are actionable under 42 U.S.C. §§ 1983 and 1985. Because Plaintiff has not brought suit against the Federal Government, his claim to Fifth Amendment relief is not actionable. Further, although Plaintiff claims a right to relief under 42 U.S.C. § 1985, he has not alleged any conspiracy to interfere with his civil rights, nor has he pointed to any part of the record in support of this claim. Accordingly, it is dismissed. See Fed. R. Civ. P. 56(e) (If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").

[15] Plaintiff's Amended Complaint alleges violations of his Fourteenth Amendment rights; thus, the Court construes Plaintiff's argument accordingly and attributes his reference to the Fourth Amendment as a typographical error.

As discussed in Section D above, Plaintiff was an at-will employee under New Jersey law.  Because an at-will employee "does not have a legitimate entitlement to continued employment," Plaintiff "lacked a property interest in retaining his position [as a maintenance and grounds worker] that was sufficient to trigger due process concerns."  Id.  Accordingly, the Court need not analyze whether the procedures provided in connection with Plaintiff's termination from employment provided due process this claim will be dismissed.  Id. at 235.

      2.   Substantive Due Process Claim

Defendants argue that Plaintiff's employment with the Board is not a fundamental right entitled to substantive due process protection.  (Defs.' Br. 34.)  Plaintiff simply argues that the lack of any standard for determining whether an employee had been excessively absent violated his substantive due process rights.  (Pl.'s Opp'n Br. ¶ 5.)

"To prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  Hill, 455 F.3d at 235 n.12 (quoting Nicholas v. Pa. State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000)).  In order for a property interest to be protected for purposes of substantive due process, "it must be 'fundamental' under the United States Constitution."  Id.  In Nicholas, the Third Circuit explicitly held that public employment is not a fundamental right entitled to due process protection.  227 F.3d at 142-43.  According, this claim also fails as a matter of law and will be dismissed.

**IV. CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion for summary

judgment in its entirety.  An appropriate order shall issue today.


Dated: <u>12/19/2013</u>                                         <u> /s/ Robert B. Kugler   </u>
                                                                ROBERT B. KUGLER
                                                                United States District Judge