NOT FOR PUBLICATION (Document No. 71)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MICHAEL WALTERS, | : : : : | Civil No. 11-6545 (RBK/AMD) |
| Plaintiff, | : : |  |
| v. | : : | **OPINION** |
| JOHNSON & JOHNSON, MCNEIL-PPC, INC. | : : : : |  |
| Defendants. | : : |  |

**KUGLER**, United States District Judge:

In this case, Plaintiff Michael Walters ("Plaintiff") asserts claims under the New Jersey Products Liability Act ("NJPLA") against Defendants McNEIL-PPC, Inc. ("McNEIL") and Johnson & Johnson ("J&J"), as well as an "alter ego" claim against J&J. Defendants move for summary judgment on Plaintiff's claims against J&J, and for dismissal under Fed. R. Civ. P. 12(b)(6) on Plaintiff's claims against McNEIL. For the reasons stated herein, Defendants motion for summary judgment on Plaintiff's claims against J&J will be **GRANTED**, and their motion to dismiss on Plaintiff's claims against McNEIL will be **DENIED**.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In October 2009, Plaintiff began taking Tylenol Arthritis, a medication "manufactured, sold and distributed" by McNEIL, "a company owned, guided, managed, supervised and controlled" by J&J. (Second Am. Compl. ¶ 10.) On or about October 21, 2009, Plaintiff began to experience stomach problems, which required him to take off five days from work. (Id. ¶ 11.)

1

At that time, Plaintiff was employed as a custodian in the maintenance and grounds department of the North Hanover Township Board of Education.  (Id. ¶ 7.)

"On November 4, 2009, Plaintiff received a letter from Matthew J. Ernandes, Jr., the business administrator of the North Hanover Township School District and the secretary to the Board of Education of North Hanover Township, advising [Plaintiff] that he was recommending to the superintendent of that school district, Dr. Richard J. Carson, that [Plaintiff's employment] contract with the North Hanover Township District should be terminated effective December 1, 2009."[1]  (Id. ¶ 12.)  Plaintiff was informed by Mr. Ernandes that the reason he was recommended for termination was that he "had utilized ten of his allotted twelve sick days since July 1, 2009." (Id. ¶ 13.)  Plaintiff was subsequently terminated from employment as of December 1, 2009.  (Id. ¶14.)

In or around December 2009, Plaintiff became aware that "there was a recall on some lots of Tylenol Arthritis that had been sold to the public" and that the recall included the specific Tylenol Arthritis that he purchased.  (Id. ¶ 15.)  Plaintiff also learned that the recall was due to an incidence of stomach problems that were allegedly linked to J&J and McNEIL's use of wood pallets to transport and store packaging materials for the drug.  (Id. ¶ 16.)  These packing materials contained the chemical 2, 4, 6-tribromoanisole, which led to the breakdown of chemicals in the wood pallets and consequently contaminated Defendants' product.  (Id. ¶¶ 16-17.)

Approximately two years later, on October 21, 2011, Plaintiff filed suit against J&J, the Board of Education of North Hanover Township, Dr. Richard J. Carson, and Matthew J.

---

[1] Although Plaintiff alleges that he was employed in the maintenance and grounds department of the North Hanover Township Board of Education, it appears that his employment contract was with the North Hanover Township School District.  This distinction, however, is immaterial for the purposes of the instant opinion.

2

Ernandes Jr. in the Superior Court of New Jersey, Burlington County. On November 8, 2011, the Board of Education of North Hanover Township, and its employees Dr. Richard Carson and Matthew J. Ernandes, Jr. (collectively, the "North Hanover Defendants"), filed a Notice of Removal pursuant to 28 U.S.C. § 1441, invoking this Court's jurisdiction under 28 U.S.C. § 1331.[2] Plaintiff filed a Motion to Amend/Correct Complaint on April 10, 2012, (Doc. No. 23), which was not opposed and subsequently granted by Magistrate Judge Donio in an Order dated April 25, 2012, (Doc. No. 24). Plaintiff's proposed amendments only added McNEIL as a defendant. (Doc. No. 23.)

In his first Amended Complaint, Plaintiff asserted three causes of action against McNEIL: (1) negligence in the manufacture of Tylenol Arthritis; (2) breach of express and implied warranties in selling the "inherently defective" Tylenol Arthritis; and (3) strict liability for placing the allegedly defective product into the stream of commerce.[3] (Doc. No. 25, Am. Compl. ¶¶ 22-31.) On May 9, 2012, McNEIL filed a motion to dismiss Plaintiff's Amended Complaint, (Doc. No. 28), which the Court granted on December 17, 2012, (Doc. No. 44). In a separate opinion issued that date, the Court held that Plaintiff's negligence, breach of implied warranty, and strict liability claims were subsumed by the NJPLA, and his failure to assert a claim under that statute was a fatal pleading deficiency. (Doc. No. 43.) The Court further held that Plaintiff failed to state a claim for breach of express warranty. (Id.) Plaintiff was, however, permitted to seek leave to file a second amended complaint addressing the deficiencies noted in the Court's opinion. (Doc. No. 66.)

---

[2] Because Plaintiff alleged a cause of action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, against the North Hanover Defendants, jurisdiction was proper before this Court. (See Doc. No. 1.)

[3] The Court exercised supplemental jurisdiction over Plaintiff's state law claims as they formed part of the same transaction or occurrence giving rise to Plaintiff's FMLA claim against the North Hanover Defendants. See 28 U.S.C. § 1367(b).

3

On January 16, 2013, Plaintiff filed his motion for leave to file a second amended complaint, (Doc. No. 49), which McNEIL and J&J did not oppose, (Doc. No. 56). On April 26, 2013, the North Hanover Defendants filed a motion for summary judgment. (Doc. No. 59.) On June 28, 2013, Plaintiff filed his Second Amended Complaint,[4] (Doc. No. 68), and on July 19, 2013, McNEIL and J&J filed their Motion to Dismiss or in the Alternative for Summary Judgment, (Doc. No. 71).

On December 19, 2013, the Court granted the North Hanover Defendants' motion for summary judgment and dismissed those defendants from this action. (Doc. No. 81.) On January 6, 2014, the Court ordered that McNEIL and J&J show cause as to why the Court should retain supplemental jurisdiction over Plaintiff's state law causes of action against McNEIL and J&J since the Court dismissed all claims over which it had original jurisdiction. (Doc. No. 83.) On January 20 and 21, 2014, Plaintiff and Defendants responded to the Court's order. (Doc. Nos. 85-86.)

The Court agrees with the parties that retaining jurisdiction over this matter serves the principles of judicial economy, convenience, and fairness, and that certain of Plaintiff's allegations are inextricable from the common nucleus of operative facts of his now dismissed claims against the North Hanover Defendants. Thus, the Court will retain jurisdiction and turn to J&J and McNEIL's pending motion.

---

[4] Because Plaintiff's proposed amendments to his Amended Complaint did not implicate his claims against the North Hanover Defendants—who did not oppose Plaintiff's motion for leave to file a second amended complaint, (Doc. No. 53)—the North Hanover Defendants' earlier-filed Motion for Summary Judgment remained ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that

5

requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If on a Rule 12(b)(6) motion dismiss, however,

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In re Rockefeller, 184 F.3d at 287 (citing Fed. R. Civ. P. 12(b)).  When converting motions to dismiss into motions for summary judgment, courts "must provide the parties 'reasonable opportunity' to present all material relevant to a summary judgment motion.  The parties can take advantage of this opportunity only if they have 'notice of the conversion.'"  Id. at 287-88 (internal citations omitted).

The Third Circuit has opined that although notice need not be express, it is recommended "that District Courts provide express notice when they intend to convert a motion to dismiss" because it "is easy to give and removes ambiguities." Id. at 288 & n.11.  Illustratively, "notice might be provided through the court's orders or at a hearing." Id.  However, the Third Circuit has also held that where motions to dismiss have been framed in the alternative as motions for summary judgment, the parties are on notice that the court is considering the motions for summary judgment.  See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); see also In re Rockefeller, 184 F.3d at 288.

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

7

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Here, Defendants seek summary judgment on all claims against J&J. In support of that motion, they attach the Declaration of Douglas K. Chia, Secretary of J&J. Because Defendants framed their motion to dismiss in the alternative as a motion for summary judgment, Plaintiff was on notice that the Court could consider Defendants' motion as one for summary judgment as well as any documents submitted in connection with that motion. See Hilfirty, 91 F.3d at 578-79. Accordingly, the Court's consideration of Mr. Chia's declaration in resolving Defendants' motion for summary judgment is proper.

## III.   DISCUSSION

### A.   Plaintiff's Claims Against J&J

Plaintiff alleges that J&J violated the NJPLA and that it is vicariously liable for the actions of its subsidiary McNEIL. J&J counters that both of Plaintiff's claims fails as a matter of law. The Court considers each claim in turn.

#### 1. Violation of the NJPLA

Plaintiff contends that J&J is liable under the NJPLA because the "Tylenol Arthritis sold and distributed by defendants was not reasonably fit, suitable or safe for its intended use." (Second Am. Compl. ¶ 25.) J&J counters that Plaintiff fails to state a claim under the NJPLA "because it is a holding company that does not design, develop, manufacture, market, promote or sell any product." (Defs.' Br. 5.) Although Defendants are correct, the Court notes that while

8

they took great care to style their motion to dismiss in the alternative as a motion for summary judgment, as well as submit a declaration in support of their arguments that Plaintiff's claims against J&J fail <u>as a matter of law</u>, they only apply the legal standard for a motion under Rule 12(b)(6) when addressing Plaintiff's claims against J&J.  However, because the Court has decided to treat Defendants' motion to dismiss as a motion for summary judgment in regards to Plaintiff's claims against J&J, it will evaluate those claims under Rule 56 and determine whether there is any genuine dispute as to any material fact, and whether J&J is entitled to judgment as a matter of law.

Product liability actions in New Jersey are governed by the NJPLA.  Liability under the NJPLA is limited to "manufacturers" and "product sellers."  <u>Smith v. Alza Corp.</u>, 948 A.2d 686, 691 (N.J. Super. Ct. App. Div. 2008); <u>see also</u> N.J. Stat. Ann. § 2A:58C-2.  The NJPLA defines "Manufacturer" as:

> (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product; (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

N.J. Stat. Ann. § 2A:58C-8.  Comparatively, a "Product seller" means

> any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.

<u>Id.</u>

Here, Plaintiff alleges that J&J "sold" and "distributed" the allegedly defective Tylenol Arthritis.  (Second Am. Compl. ¶ 25.)  In response, Defendants state, by way of the Declaration

9

of Douglas K. Chia, that "J&J does not design, develop, manufacture, market, promote or sell any products," (Defs.' Br., Declaration of Douglas K. Chia ("Chia Decl.") ¶ 5), which rebuts Plaintiff's allegation that J&J is a "product seller." See N.J. Stat. Ann. § 2A:58C-8 (defining "product seller" to include anyone who "sells" or "distributes").  Because Plaintiff has failed to counter Defendants' evidence and demonstrate that there is a genuine dispute of material fact as to whether J&J is a "product seller"—and thus can be held liable under the NJPLA—the Court will grant J&J summary judgment on Plaintiff's NJPLA claim.  See Corliss, 247 F. App'x at 354.

2. Vicarious Liability

Plaintiff also seeks to hold J&J vicariously liable for McNEIL's actions.  Defendants argue that Plaintiff has failed to satisfy the threshold pleading requirements for piercing the corporate veil under New Jersey law, and thus J&J cannot be held liable for the actions of one of its subsidiaries.  Although Defendants once again fail to apply the proper legal standard as to this claim, the Court will evaluate it under Rule 56 and determine whether there is no genuine dispute as to any material fact and whether J&J is entitled to judgment as a matter of law.

Under New Jersey law, a plaintiff may state a claim for piercing the corporate veil by showing: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law."  Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171-72 (3d Cir. 2002) (citing Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988).

To succeed in piercing the corporate veil, a plaintiff must allege that the parent "completely dominate[s] the finances, policy, and business practice with respect to the subject

transaction" to such a degree that the subsidiary has "no separate mind, will, or existence of its own." Craig, 843 F.2d at 150. The relevant factors in this inquiry include:

> Gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of the funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

Id. (quoting American Bell, Inc. v. Fed'n of Tel. Workers, 736 F.2d 879, 886 (3d Cir. 1984)). It is well-established that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).

Plaintiff offers two allegations in support of his claim that J&J should be held vicariously liable for McNEIL's conduct. First, he alleges that McNEIL "was the alter ego of . . . [J&J], and thus, the liability of [McNEIL] should be imputed onto [J&J]." (Second Am. Compl. ¶ 27.) Second, he alleges that J&J "had the right of control over [McNEIL], and did in fact control or fail to control [McNEIL], with regard to all of the events and circumstances relevant to this action, thus making [J&J] vicariously liable for the actions of [McNEIL]. (Id. ¶ 28.) In response, Mr. Chia states that J&J is a company incorporated under the laws of the State of New Jersey which "directly or indirectly owns more than 275 operating companies in 60 countries." (Chia Decl. ¶ 4.) He further states that McNEIL, a corporation organized and existing under the laws of the State of New Jersey, "is an indirect subsidiary of J&J." (Id. ¶ 10.) Finally, he states that although McNEIL is an indirect subsidiary of J&J, "J&J maintains separate corporate records, separate financial books, and separate corporate officers and directors from [McNEIL]," and that "J&J does not intermingle funds with [McNEIL]." (Id. ¶¶ 8-9.) Plaintiff has failed to offer any evidence to contradict Mr. Chia's declaration. See Corliss, 247 F. App'x at 354.

11

Based on the record before the Court, it is apparent that J&J is not engaged in the type of activity ordinarily associated with an abandonment of or disregard for corporate formalities. Compare Foodtown, Inc., 296 F.3d at 172 (holding that allegations were sufficient to meet first prong of the veil-piercing test where the complaint alleged that a corporation and its alleged alter ego: "failed to maintain formal barriers between the management structures"; "commingled funds and other assets"; "failed to observe other corporate formalities"; "shared twelve of thirteen common directors"; shared the same shareholders, the same principal office, and registered office; and were structured such that the Board of Directors of one corporation "was dominated and controlled" by the alter ego's Board), with Premier Pork L.L.C. v. Westin, Inc., No. 07–1661, 2008 WL 724352, at *7 (D.N.J. Mar. 17, 2008) (holding that allegations that one corporation was a subsidiary of another, that both corporations shared the same chief financial officer, and that one corporation had a controlling interest in the other to be insufficient to pierce the corporate veil).

Accordingly, because Plaintiff has failed offer evidence in support of his claims against J&J that would create a genuine issue of material fact more appropriately reserved for trial, Defendants' motion for summary judgment on this claim will be granted.

### B. Plaintiff's Claim against McNEIL

Plaintiff's claim against McNEIL can be summarized as follows: Due to the allegedly defective Tylenol Arthritis, Plaintiff was forced to miss several days of work. (See generally Second Am. Compl.) Because Plaintiff used ten of twelve sick days that were allotted to him by his employer, he was terminated from his employment and suffered "economic deprivation." (Id. ¶ 19.) Accordingly, Plaintiff seeks recovery of the economic damages he sustained as a result of his loss of employment. (Id.)

In moving to dismiss Plaintiff's claim, McNEIL sets forth several arguments. First, because Plaintiff limits his claim to economic injury, and his remedy to economic loss, he cannot recover under the NJPLA. Second, Plaintiff fails to allege sufficiently a physical injury. Third, Plaintiff's claims are barred by an intervening act. And fourth, Plaintiff's claims are barred by the applicable statute of limitations.

    1. <u>Statute of Limitations and Relation Back under Rule 15(c)(1)</u>

McNEIL claims that Plaintiff's suit under the NJPLA is barred by the applicable two-year statute of limitations and cannot be saved by the relation-back rule under Fed. R. Civ. P. 15(c)(1). Plaintiff disagrees and counters that the appropriate statute of limitations is the six-year statute set forth in N.J. Stat. Ann. § 2A:14-1 for tortious injury resulting only in economic losses. But, even if the two-year period applies, Plaintiff argues that his Amended Complaint relates back to his original Complaint under Rule 15(c)(1), and thus his claims against McNEIL are timely.

With respect to the first issue, McNEIL is correct that Plaintiff's claim under the NJPLA is subject to a two-year statute of limitations. <u>See</u> <u>Dziewiecki v. Bakula</u>, 853 A.2d 234, 237 (N.J. 2004) (citing N.J. Stat. Ann. § 2A:14-2) (the NJPLA "permits suit up to two years from accrual of the cause of action."). Although Plaintiff argues that he is only claiming damages for economic losses, and thus the more appropriate statute of limitations is that set forth in § 2A:14-1, the damages that Plaintiff claims flow from his alleged physical injury, <u>i.e.</u>, his stomach problems. Thus, the limitations period set forth in § 2A:14-2 applies.

With respect to the second issue, McNEIL concedes that Plaintiff's original Complaint against J&J was timely, (Defs.' Br. 8), but argues that when he amended his original Complaint

in order to add McNEIL as a defendant, he did so well outside the statute of limitations and without justification, and thus cannot be saved by Rule 15(c). McNEIL is wrong.

Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Although the "chief consideration of policy [underlying Rule 15(c)] is that of the statute of limitations," Nelson v. County of Allegheny, 60 F.3d 1010, 1014 n.7, "[t]he substitution of . . . parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based," Staren v. American National Bank & Trust Co. of Chicago, 529 F.2d 1257, 1263 (7th Cir. 1976).

McNEIL acknowledges that it had notice of Plaintiff's original Complaint against J&J within 120 days of when Plaintiff first filed, but states that the reason Plaintiff failed to include McNEIL as a defendant in his original Complaint was because he failed to fully investigate his claim such that he could identify the proper parties to sue. Plaintiff counters that he did make a mistake in initially naming J&J, but excluding McNEIL, as a defendant. He further states that J&J "was closely identified with [Tylenol Arthritis] in various newspaper articles . . . [but now]

14

claims that it did not manufacture the Tylenol Arthritis, but rather that McNEIL did." (Second Am. Compl. ¶ 4.)

McNEIL conceded notice and did not argue that it was prejudiced in any way in defending on the merits, thus part (i) of Rule 15(c)(1)(C) is satisfied. See Queens W. Dev. Corp. v. Honeywell Int'l, Inc., No. 10-4876, 2013 WL 163306, at *6 (D.N.J. Jan. 15, 2013) ("[W]here the defendant has had notice from the beginning that the plaintiff . . . is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist."). The remaining issue before the Court is whether McNEIL "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

In Krupski v. Costa Crociere S.p.A., the Supreme Court stated that part (ii) of Rule 15(c)(1)(C) "asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing [his or] her original complaint." 130 S. Ct. 2485, 2493 (2010). Indeed, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." Id. at 2493–94; see also Arthur v. Maersk, Inc., 434 F.3d 196, 208 (3d Cir. 2006) ("A 'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description.").

In his initial Complaint, Plaintiff listed Johnson and Johnson as the defendant responsible for the manufacture, distribution, and sale of Tylenol Arthritis. (Doc. No. 1, Compl. ¶ 21.) As J&J's indirect subsidiary, and the party actually responsible for the manufacture, marketing, distribution and sale of Tylenol Arthritis, (see Defs.' Br. 5), McNEIL should have known that Plaintiff made a mistake with regard to J&J's connection to the allegedly defective Tylenol

15

Arthritis. Consequently, McNEIL should have also known that but for this mistake, it would have been identified in the initial Complaint as the defendant responsible for the manufacture, distribution, and sale of Tylenol Arthritis, and thus responsible for the alleged defect. Accordingly, because part (ii) of Rule 15(c)(1)(C) is satisfied, the Court finds that Plaintiff's first Amended Complaint relates back to his initial Complaint. See Myers v. Demoss, No. 12-3660, 2012 WL 5401862, at *4 (E.D. Pa. Nov. 6, 2012) (holding that plaintiff's amended complaint related back to his original complaint, and thus was not barred by the applicable statute of limitations, where even though she mistakenly identified a certain police officer as being affiliated with the Chester Police Department when, in fact, he was not, that police officer's true employer "should have known that the plaintiff made a mistake in regards to [that officer's] affiliation," and thus they also should have known that "but for th[at] mistake, they would have been identified in the initial complaint as the defendants who allegedly failed to train that officer in the use of deadly firearms); see also Browning v. Safmarine, Inc., 287 F.R.D. 288, 292-93 (D.N.J. 2012).

### 2. Injury and Proximate Cause

McNEIL also challenges the sufficiency of Plaintiff's allegations concerning his alleged injury and whether the alleged defect in the Tylenol Arthritis was the proximate cause of that injury.

To prevail on a products liability action, plaintiff must show, among other things, "that a reasonably foreseeable user was injured, and [ ] that the [product] defect was the proximate cause of the plaintiff's injury." Ebenhoech v. Koppers Indus., Inc., 239 F. Supp. 2d 455, 472 (D.N.J. 2002). "Harm" is defined in the NJPLA as, "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental

anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C–1(b)(2) (emphasis added). Comparatively, the concept of proximate cause is well developed under New Jersey common law and "has been defined as any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Garrison v. Twp. of Middletown, 712 A.2d 1101, 1114 (N.J.1998); see also Kasper v. Board of Trustees of Teachers' Pension and Annuity Fund, 754 A.2d 525, 540 (N.J. 2000) (stating that proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.").

Turning first to McNEIL's argument that Plaintiff's conclusory assertions of "stomach problems" are too vague to satisfy the pleading standard of Iqbal, the Court holds that Plaintiff has sufficiently alleged an injury under the NJPLA. Although the Court imagines that Plaintiff could have provided more detail about his stomach problems, it is not for this Court to pass judgment on the nature of Plaintiff's alleged injury on a motion to dismiss. Plaintiff's allegation of some physical injury—no matter how slight—still alleges "harm" as is required by the NJPLA. See N.J. Stat. Ann. § 2A:58C-1(b)(2) ("harm" includes "personal physical illness, injury or death").

Turning next to McNEIL's arguments concerning proximate cause, McNEIL argues that there is no proximate cause because Plaintiff's economic damages are based upon his allegedly wrongful termination and that wrongful termination is an intervening and superseding cause of Plaintiff's injury. However, at this juncture of the proceedings, Plaintiff need only sufficiently allege proximate cause, not prove it. McNEIL's arguments, while persuasive, would have this

17

Court engaging in a factual determination as to whether Plaintiff's lost wages from his termination are too remote an injury to hold McNEIL responsible for the allegedly defective Tylenol Arthritis. Accepting Plaintiff's allegations as true, as the Court must on a motion to dismiss, McNEIL's defective medication "caused [Plaintiff] . . . to improperly lose his employment with the Board of Education of North Hanover Township, which [ ] resulted in his incurring significant damages, primarily, economic deprivation." (Second Am. Compl. ¶ 19.) Although Plaintiff might not succeed on the merits of his case, he has alleged enough to at least "be afforded an opportunity to offer evidence in support of [his] claims." See In re Rockefeller, 311 F.3d at 215.

       3.   Plaintiff's Ability to Recover for His Economic Losses Under the NJPLA

Finally, McNEIL argues that Plaintiff has failed to state a claim under the NJPLA because pure economic harm is not recoverable under the statute. In support of this argument, McNEIL relies on Crouch v. Johnson & Johnson, No. 09-2905, 2010 WL 1530152 (D.N.J. April 15, 2010) and DeBendetto v. Denny's, Inc., 23 A.3d 496 (N.J. Super. Ct. 2010). However, these cases are distinguishable.

In Crouch, plaintiffs alleged that they suffered an economic loss at the time they purchased various children's personal care products because these products were contaminated with toxic chemicals linked to, among other things, increased cancer risk. 2010 WL 1530152, at *1. In seeking recovery for their economic losses, plaintiffs did not allege any "present or future physical injuries as a consequences of Defendants' products." Id. at *6. As a result, the Court held that because "[h]arm, for purposes of the [NJ]PLA, does not include pure economic loss[,] [i]nsofar as Plaintiffs concede that their injury is purely economic, Plaintiffs' claims cannot survive." Id. at *7.

18

Similarly, in DeBendetto, plaintiff filed suit under the New Jersey Consumer Fraud Act ("NJCFA") claiming that defendant "'deceptively presents' menu items without disclosing that its meals contain 'excessive' amounts of sodium." Id. at 497-98. The Court held that plaintiff's NJCFA claim was, in essence, a products liability claim and thus subsumed by the NJPLA. Id. at 499, 502. In granting defendant's motion to dismiss plaintiff's claims, the Court held that although plaintiff alleged that defendant's menu items posed potential health risks, he failed to include any actual personal injury allegations in his complaint, and sought only to recover the amount of money he spent on those meals. Id. at 501, 503-05. The Court concluded that "insofar as [plaintiff] concedes that his injury is purely economic, his claims cannot survive." Id. at 504-05.

Here, although Plaintiff seeks pure economic recovery stemming from the loss of his job, he has alleged a physical injury, and thus has stated a cognizable claim under the NJPLA.

## IV.     CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' motion for summary judgment as to J&J and **DENY** their motion to dismiss as to McNEIL. An appropriate order shall issue today.


Dated: 3/5/2014                                            s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge

19